**Herman Ludson KNIGHT, Appellant,**

v.

**R. P. BALKCOM, Jr., Warden of State Prison, Reidsville, Georgia, Appellee.**

No. 22357.

United States Court of Appeals
Fifth Circuit.

July 18, 1966.

---

John J. Sullivan, W. Lance Smith, Savannah, Ga., for appellant.

Benjamin L. Johnson, Albert Sidney Johnson, Peyton S. Hawes, Jr., Asst. Attys. Gen., Eugene Cook, Atty. Gen., Atlanta, Ga., for appellee.

Before BROWN, WISDOM and THORNBERRY, Circuit Judges.

WISDOM, Circuit Judge:

Herman Ludson Knight pleaded guilty in the Dougherty (Ga.) Superior Court to an indictment charging the capital crime of armed robbery. The court sentenced Knight to serve twenty years in the Georgia state penitentiary. He did not appeal. Knight later filed in the City Court of Reidsville, Ga., an application for writ of habeas corpus alleging that he had been denied his federally guaranteed right to assistance of counsel. The City Court denied the application; the Supreme Court of Georgia affirmed. Knight v. Balkcom, 1964, 219 Ga. 589, 134 S.E.2d 801. October 7, 1964, Knight raised the same constitutional claim in an application for writ of habeas corpus filed with the United States District Court for the Southern District of Georgia. After a hearing on November 25, 1964, the district court denied the application. Knight appeals. We reverse and remand.

An indigent accused, even if he pleads guilty, must be provided with counsel unless that right is intelligently and completely waived. Gideon v. Wainwright, 1963, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733; Hamilton v. State of Alabama, 1961, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114; Davis v. Holman, 5 Cir. 1966, 354 F.2d 773, 775; Harvey v. State of Mississippi, 5 Cir. 1965, 340 F.2d 263, 268–269. The waiver must be a "considered choice of the petitioner", "an intentional relinquishment or abandonment" of the right to assistance of counsel. Fay v. Noia, 1963, 372 U.S. 391, 439, 83 S.Ct. 822, 849, 9 L.Ed.2d 837; Johnson v. Zerbst, 1938, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461, 1464; Randel v. Beto, 5 Cir. 1965, 354 F.2d 496, 502–503. *Anything less is not a waiver*. Carnley v. Cochran, 1962, 369 U.S. 506, 516, 82 S.Ct. 884, 8 L.Ed.2d 70, 77; State of Louisiana ex rel. Byrnes v. Walker, E.D.La.1963, 217 F.Supp. 168, 171–172.

There is no record of the state court proceeding when Knight pleaded guilty to an offense for which he could have been electrocuted. At the federal habeas corpus hearing, the only evidence explaining the circumstances of the alleged denial of Knight's right to assistance of counsel came from Knight and from Maston O'Neal, prosecutor at the state pro-

ceeding. On direct examination, Knight testified:

A  Yes, sir. So, I was called before the Bench then, before the Judge, and he did ask me if I had a lawyer and if I had counsel, and I stated "No, sir, I did not have counsel."

Q  Now, at this point, did he ever offer you counsel?

A  No, sir, no one offered me any counsel.

Q  That was all that was said in the court room?

A  Yes, sir, as far as counsel was concerned that was all that was said.

Q  Did Mr. O'Neal ever offer you counsel after asking if you had counsel?

A  No, sir. Mr. O'Neal didn't offer me any counsel. His only advice to me was that it would be to my best interest to enter a plea of guilty, that possibly I could receive the electric chair on this crime, that it would be in my best interest to enter a plea of guilty. * * *

Q  Did Mr. O'Neal, prior to the imposition of the sentence, read this indictment and ask you if you understood this indictment, the contents of the indictment?

A  No, sir.

Q  Did he tell you that you were entitled to a lawyer and that if you could not afford a lawyer that the court would appoint you a lawyer?

A  No, sir.

The prosecutor, O'Neal, was not present at the federal habeas hearing but his testimony was submitted in the form of answers to interrogatories propounded by the state. Interrogatory number 7 asked: "Please state to the best of your ability and recollection the facts, circumstances and disposition surrounding that case as it related to H. L. Knight". Interrogatory number 8 asked: "Please state specifically whether H. L. Knight requested or was offered the benefit and assistance of counsel during these proceedings". Mr. O'Neal's full answers are set out in the margin.[1]

1. No. 7: As I recall the matter, two women working in a laundry in Albany, Georgia, were held up and robbed by two men who used a pistol. The robbery occurring on October 24, 1958, at which time the robbers took $169.59. The women were working in the office of the laundry and the money, of course, belonged to the laundry.

During that same day Knight and Burns were arrested in a nearby town and returned to Albany, where warrants were issued and they were placed in the Dougherty County jail. About two weeks later, Knight escaped.

On December 12th of that year, 1958, Knight and Burns were indicted by the Grand Jury of Dougherty County, but Knight was still at large, because of the escape. Later while Knight was still at large, Burns entered a plea of guilty on January 12, 1959.

On January 20th, 1959, which was a Tuesday morning, I was attending my duties as the Solicitor General in the Court House of Baker County, in the small town of Newton, I learned that Sheriff L. W. Johnson of Baker County had captured Knight and another prisoner, that same morning, and had returned them to the Dougherty County Jail in Albany, Georgia.

At that time the duly elected Judge of the Albany Circuit, Judge Carl E. Crow, was ill, having suffered a heart attack. Judge O. T. Gower, Judge Emeritus, of the Cordele Judicial Circuit, was presiding in the absence of Judge Crow.

Later during that same week, I received a long distance telephone call from the Sheriff's office in Albany, Georgia, stating that Knight wished to plead guilty to the robbery, and they wanted to know if the Judge and I, that is the acting Judge and I, would come to Albany to attend to the matter so that Knight would not have to remain in jail until the next regular session of court.

When we had disposed of the business before the Court in Newton, Judge Gower and I went to Albany, and went to the Dougherty County Court Room. Mr. Knight was brought to where I was sitting and introduced to me. I spoke to Mr. Knight, and told him that I understood that he wished to enter a plea of guilty to the charge of robbery of the women in the laundry.

I showed him the indictment and explained to him that robbery with an of-

Excerpts from the answers confirm Knight's version of the circumstances surrounding the alleged denial of assistance of counsel:

[No. 7] I asked Mr. Knight if he had a lawyer, and he said that he did not

and didn't see why he would need one, if he entered the plea of guilty, and received a penitentiary sentence. * *

Judge Gower asked the prisoner if he had a lawyer, and he said he did

fensive weapon, such as a pistol, was a capital crime, and Mr. Knight said that he knew that, but that he hoped that it wouldn't make any difference if he entered a plea of guilty that he intended to plead guilty.

I asked Mr. Knight if he had a lawyer, and he said that he did not and didn't see why he would need one, if he entered the plea of guilty, and received a penitentiary sentence, but he wished to know if I would recommend a light sentence. After talking to some of the officers I decided that I would accept a plea of guilty and would recommend the mercy of the Court, but that I would not make any specific recommendation as to the length of the sentence. Knight urged me to recommend a specific number of years but I would not agree to it.

I told him that the minimum punishment was 4 years and that it went up to 20 years and that he could get a life sentence, but that I was absolutely sure that as long as I recommended mercy that he would not be sentenced to the electric chair.

I told him that he would have to decide for himself, whether or not he wished to plead guilty, and all that I would do would be assure him that he would not get the chair. Knight said that he wished that I would recommend a small number of years, but that since I would not, he still wanted to begin serving his time and he wished to plead guilty. So I wrote out the plea and carefully read it to him, and showed it to him, and he read it and signed it. Knight was then brought up to the Bench and I announced to Judge Gower that he had entered a plea of guilty. Judge Gower asked the prisoner if he had a lawyer, and he said he did not and that he did not need a lawyer since he was pleading guilty.

Judge Gower then asked me to inform him as to the nature of the case. I went into detail in telling Judge Gower about the robbery itself, the escape of Knight, and the circumstances surrounding his recapture in Newton. I also told Judge Gower that I was making a specific recommendation of Mercy.

Judge Gower then question[ed] Knight at great length. He asked him about his childhood, who his parents were, where he

had lived, what his parents did for a living, his own experiences, his previous offenses and so on. Upon learning that Knight had been in prison for other offenses, Judge Gower questioned him as to what caused him to do these things. He also asked Knight how he met Burns, how they planned the robbery, why he decided to escape and where he had been from the time of escape until the time of recapture. Upon learning that Knight had spent most of this time in Florida, Judge Gower asked Knight why he returned to the vicinity of Albany.

This questioning kept up for quite some time with Knight answering the Judge freely and frankly, and begged the Judge to be lenient, because he had spent quite a lot of time in prison and he wished to go straight and take up a new way of life.

When the Judge had finished his questioning, he formally pronounced a sentence of not less than 20 years nor more than 20 years, and stated that he had decided on that sentence, and thought it was best for both the defendant and the public.

Several weeks after this incident, I received several telephone calls from the office of the State Attorney in Pensacola. The assistant State Attorney said that Knight had been intervolved and had agreed to turn state's evidence in a jewelry store burglary, in Pensacola. The Assistant State Attorney told me that he wished to have Knight transported to Pensacola so that he might testify in Court against a co-defendant. The assistant State Attorney said that Knight would be delivered to the Court in Pensacola, at the expense of the State of Florida, and that he would be returned to Georgia. I explained to the officer that this matter would have to be decided by the Department of Corrections of the State of Georgia, and I gave him the telephone number of that department in Atlanta.

It is my understanding that Knight did agree to testify in Pensacola, and was transported there and testified in that Court.

[No. 8] Mr. Knight was specifically asked whether or not he had a lawyer and he plainly said that he did not need a lawyer.

not and that he did not need a lawyer since he was pleading guilty. * * * [No. 8] Mr. Knight was specifically asked whether or not he had a lawyer and he plainly said that he did not need a lawyer.

Indeed, the attorney for the state at the federal habeas corpus hearing stated:

Now, I will admit at the outset that there is no specific language in our evidence to say "Mr. Knight, you are hereby entitled to counsel. Do you want counsel"?, and a reply of "No".

■■ The statements by the judge and by the prosecutor, "Do you have counsel?", and the reply of the accused, "I don't need counsel.", is not sufficient evidence to show, under Carnley v. Cochran, supra, that the accused was offered counsel but intelligently and understandingly rejected the offer. The words, "Do you have counsel?", would not clearly convey to the accused his right to assistance of counsel, and to have the state appoint counsel at no expense to him if he should be indigent. Nothing in the record, including the unresponsive answer, "I don't need counsel.", shows that Knight understood his right to appointed counsel. It is impermissible to assume from a silent record, or the accused's failure to request counsel, or the guilty plea that Knight understood his right to appointed counsel. Carnley v. Cochran, supra; Rice v. Olson, 1945, 324 U.S. 786, 65 S.Ct. 989, 89 L.Ed. 1367; Davis v. Holman, supra at 776; Lyles v. United States, 5 Cir. 1965, 346 F.2d 789. If the defendant did not know about his right to appointed counsel, and was not clearly advised of that right, there cannot be an intentional relinquishment or waiver of that right. Reed v. United States, 5 Cir. 1965, 354 F.2d 227; see Doughty v. Maxwell, 1964, 376 U.S. 202, 84 S.Ct. 701, 11 L.Ed.2d 650 (per curiam) and Harvey v. State of Mississippi, supra, 340 F.2d at 269 citing United States ex rel. Durocher v. Lavelle, 2 Cir. 1964, 330 F.2d 303, 308 (en banc), cert. denied, 377 U.S. 998, 84 S.Ct. 1921, 12 L.Ed.2d 1048. The failure of notice to Knight of his right to the assistance of counsel invalidated his guilty plea and rendered his conviction and incarceration constitutionally improper. Harvey v. State of Mississippi, supra, 340 F.2d at 271.

The judgment of the district court is reversed and the cause is remanded with directions to issue the writ of habeas corpus releasing the appellant from custody on his present conviction and sentence, subject to re-trial by the State.