**Thomas Patrick SCHRAM, Appellant,**

v.

**Hoyt C. CUPP, Warden, Oregon State Penitentiary, Appellee.**

**No. 24077.**

United States Court of Appeals, Ninth Circuit.

Nov. 25, 1970.

Jack B. Schwartz (argued), Portland, Or., for appellant.

Thomas H. Denney (argued), David H. Blunt, Asst. Attys. Gen., Lee Johnson, Atty. Gen., State of Oregon, Portland, Or., for appellee.

Before BARNES, ELY, and HUFSTEDLER, Circuit Judges.

PER CURIAM.

The majority opinion and the dissenting opinion heretofore filed on April 17, 1970, are ordered withdrawn.

The annexed majority opinion in which Circuit Judges ELY and HUFSTEDLER concur and the dissenting opinion of Circuit Judge BARNES are ordered filed.

The petition for rehearing is dismissed as moot.

HUFSTEDLER, Circuit Judge:

Schram appeals from an order of the District Court dismissing, without an evidentiary hearing, his petition for federal habeas relief from an Oregon judgment. (28 U.S.C. §§ 2241–2254.) He had exhausted his state remedies before he filed his petition for federal relief.[1]

At issue is the constitutional validity of two prior convictions relied upon by an Oregon court to increase the penalty upon his last conviction from three years to twenty years under the provisions of Oregon's habitual offender statute. (Ore.Rev.Stat. §§ 168.015 et seq.)

Schram's Oregon convictions began in 1946, when he pleaded guilty to one count of an information charging him with obtaining $20 by false pretenses. In 1948, he was convicted upon two counts of unarmed robbery following his plea of guilty to each count. In 1952, he was convicted upon one count of unarmed robbery to which he had entered a guilty plea. Finally, in 1964, he was convicted upon one count of an information charging him with burglary not of a dwelling, for which he was initially sentenced to an indeterminate three-year term in the penitentiary. Thereafter, Oregon instituted recidivist proceedings charging him with felony convictions in 1946, 1948, and 1952. The court found that Schram had three convictions prior to his 1964 conviction, vacated the three-year sentence upon his 1964 conviction, and imposed the twenty-year sentence that Schram is presently serving.

Schram then sought postconviction relief in a state court in Oregon challenging the validity of the 1946 and 1952 convictions on the grounds that he had not been represented by counsel and had not knowingly and intelligently waived counsel on either occasion and that he had not voluntarily entered the guilty pleas. An evidentiary hearing was held on his petition. Schram was the sole witness. The judge who took Schram's pleas and sentenced him in 1946 and 1952 had died before the hearing. The court reporter and the prosecuting attorney were also dead. The contemporaneous record of the 1946, 1948, and 1952 proceedings was limited to the judgment rolls.

The judgment roll of the 1946 conviction reveals only that Schram expressed a desire for counsel. It is barren of any indication that Schram was given or had waived counsel.

The judgment roll of the 1952 conviction contains a document entitled "Waiver, Arraignment and Plea." It recites: "The defendant having been advised by the Court of his right to be represented by counsel, and the defendant having stated that he did not desire counsel * * * the Information was read by the District Attorney under the direction of the Court * * * and * * * defendant pleaded guilty thereto." Nothing in the judgment roll indicated that Schram was advised specifically that he had a right to counsel at public expense. At his state evidentiary hearing, Schram testified that he was not so advised and that he did not know

---

1. The Supreme Court of Oregon affirmed the denial of his petition for postconviction relief in Schram v. Gladden (1968) 250 Or. 603, 444 P.2d 6.

his right. He knew he was entitled to a lawyer if he could hire one, but neither he nor his family had the financial means to do so. He testified that no one told him about the elements of the offense, the possible defenses, or the maximum punishment for the 1952 offense. He further testified that neither his lawyer in the 1948 case nor anyone else had told him any of those things. There was no contrary evidence.

The Oregon court found the following facts: In 1946, Schram was charged with obtaining money by false pretenses. He "was advised of his right to counsel, but he was not informed that he could have an attorney at public expense if he was without funds. The court record is incomplete and ambiguous as to defendant's expressed wish concerning counsel. * * * The petitioner discussed the charge against him with the Klamath County Sheriff who told him he ought to plead guilty, because he would probably get only a little jail time and probation. A few days later, the petitioner again appeared in court without counsel and freely and voluntarily plead guilty to the crime of obtaining money by false pretenses. * * * He knew the consequences and meaning of pleading guilty and he knew the facts from which the charge against him arose. No one had explained to him, however, the technical aspects, possible defenses, or the elements of the crime. Petitioner hoped that since it was a first offense, the court would grant probation. Instead, a sentence to the Oregon State Penitentiary for two years was imposed and ordered executed." However, the court expressly declined to decide the validity of the 1946 conviction.

With respect to the 1952 conviction, the Oregon court found that Schram had no counsel, that he was told that he had a right to counsel, and that he was not told in 1952 that he had a right to free counsel. It also found that Schram knew that he had a right to court-appointed counsel, relying solely upon entries in the judgment roll of his 1948 conviction indicating that Schram had

then requested counsel and the court appointed a lawyer for him. Court-appointed counsel later withdrew when private counsel was retained for him.

On appeal from the order denying his petition for postconviction relief, the order was affirmed by a divided court. (Schram v. Gladden, *supra*, 444 P.2d 6(4–3).) The majority of the court held that the trial court's finding that Schram knew in 1952 that he had a right to court-appointed counsel was amply supported by the recitations in the record of his 1948 conviction. It concluded that the trial court did not err in deciding that Schram had validly waived counsel in 1952.

The Federal District Court received in evidence the record of the Oregon postconviction hearing. It conducted no evidentiary hearing of its own. The District Court found that the 1952 conviction was valid, failed to decide the validity of the 1946 conviction, and denied relief, from which order Schram appeals.

Assuming without deciding, that the burden was on Schram in his proceedings to obtain relief on federal habeas to prove that he did not knowingly and intelligently waive counsel in 1946 and 1952 (*compare* Carnley v. Cochran (1962) 369 U.S. 506, 82 S.Ct. 884, 8 L. Ed.2d 70 *with* Burgett v. Texas (1967) 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319), we hold that Schram prima facie sustained that burden by introducing the record of his Oregon evidentiary hearing on the face of which appear the following facts: (1) he did not have counsel either in 1946 or in 1952, and (2) he was not contemporaneously advised on either occasion that he had a right to counsel supplied without cost to him.

Since the decision of Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L. Ed.2d 799, in 1963, the Supreme Court has made clear that a guilty plea to a serious crime entered without counsel and without a waiver of counsel fully complying with the standards of Johnson v. Zerbst (1938) 304 U.S. 458, 58 S.

Ct. 1019, 82 L.Ed. 1461, is constitution-, ally infirm. (*E. g.*, Brady v. United States (1970) 396 U.S. 809, 90 S.Ct. 86, 24 L.Ed.2d 63; McConnell v. Rhay (1968) 393 U.S. 2, 89 S.Ct. 32, 21 L.Ed. 2d 2; Arsenault v. Massachusetts (1968) 393 U.S. 5, 89 S.Ct. 35, 21 L.Ed. 2d 5; Mempa v. Rhay (1967) 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336.)

■ The question is thus: Can a waiver of an indigent defendant's right to counsel at the time he enters a guilty plea to a felony charge be sustained when the record developed on collateral attack affirmatively shows that he was not contemporaneously advised that he had a right to free counsel? We hold that it cannot: An indigent defendant cannot be held to have intelligently and understandingly waived his right to counsel when he was not then told that he had a right to such counsel and none was supplied to him. (Commonwealth v. Ritchey (1968) 431 Pa. 269, 245 A.2d 446; Commonwealth v. Blose (1968) 430 Pa. 209, 241 A.2d 918; *Cf.* McGarrah v. Dutton (5th Cir. 1967) 398 F.2d 829 and McGarrah v. Dutton (5th Cir. 1967) 381 F.2d 161 (same case on prior appeal); *see also* Miranda v. Arizona (1966) 384 U.S. 436, 473, 86 S.Ct. 1602, 16 L.Ed.2d 694; Losieau v. Sigler (8th Cir. 1969) 406 F.2d 795, 799–801.)

■ To impart knowledge of the availability of free counsel to an indigent defendant, the advice must be reasonably contemporaneous with the asserted waiver of the right. (*Cf.* Shawan v. Cox (10th Cir. 1965) 350 F.2d 909; People v. Estrada (1965) 236 Cal. App.2d 221, 45 Cal.Rptr. 904; *see also* Miranda v. Arizona, *supra*, 384 U.S. at 472–473, 86 S.Ct. 1602; McGarrah v. Dutton, *supra*, 398 F.2d at 830.) To hold otherwise would seriously dilute the standards of waiver of fundamental con-

stitutional rights repeatedly stated by the Supreme Court. (*E. g.*, Brookhart v. Janis (1966) 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314; Carnley v. Cochran, *supra*, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed. 2d 70; Rice v. Olson (1945) 324 U.S. 786, 65 S.Ct. 989, 89 L.Ed. 1367). Proof that Schram had asked for and received court-appointed counsel in a different case four years before his 1952 plea is insufficient as a matter of law to meet the contemporaneous test.[1]

■ Because Schram's presentation of the record of the Oregon evidentiary hearing established his prima facie case warranting habeas relief in the district court, the burden of going forward with the evidence rested on Cupp. (United States ex rel. Chambers v. Maroney (3d Cir. 1969) 408 F.2d 1186, 1192; Losieau v. Sigler, *supra*, 406 F.2d 795.) Cupp offered no additional evidence.

Ordinarily, we would return the cause to the district court with directions to accord Schram an evidentiary hearing. (Townsend v. Sain (1963) 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770; Fay v. Noia (1963) 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837.) But under the circumstances of this case no useful purpose would be served by such a hearing. All of the participants in the 1946 and 1952 convictions, except Schram, are dead. No contemporary transcripts are available for either case. Schram fully testified in the Oregon evidentiary hearing. If he were to testify again before the district court and if the district court were to discredit his testimony entirely, as did the Oregon court, the posture of the case would be the same as it is today. The existing records make out his prima facie case for relief and there is no evidence available to Cupp to rebut it.

We conclude that Schram is entitled to relief on his habeas petition: The 1946

---

1. Because of our above conclusion it is unnecessary for us to hold, as Justice Denecke and two other Justices of the Oregon Supreme Court would have held, that Schram's 1952 conviction was invalid for the additional reason that his plea of guilty was not otherwise voluntary. (Brady v. United States, *supra*; Von Moltke v. Gillies (1948) 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309; Sessions v. Wilson (9th Cir. 1967) 372 F. 2d 366.)

and 1952 convictions were constitutionally invalid and neither could have been used to enhance punishment for his 1964 offense. (Burgett v. Texas, *supra*, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319.)

The Oregon recidivist statute forbids the use of a prior felony conviction to enhance punishment if the offender was "finally and unconditionally discharged from all resulting imprisonment, probation or parole more than seven years before the commission of the principal felony." (Ore.Rev.Stat. § 168.015(4) (c).) Schram's 1948 conviction expired for enhancement purposes not later than 1959 (a four-year maximum term plus seven-year recidivist limitation.)

The order dismissing Schram's habeas petition is reversed and the cause is remanded, with directions to grant the writ unless Oregon vacates Schram's conviction upon the habitual offender proceeding not later than 60 days from the date our mandate issues.

BARNES, Circuit Judge (dissenting).

I respectfully dissent. I cannot accept the reasoning of the majority in this case, which affects a substantial incursion on the fact finding powers of the federal *habeas corpus* judge, and dilutes, indirectly but significantly, settled principles of burden of proof in federal collateral proceedings.[1]

As to the validity of appellant's waiver of counsel in the 1952 proceeding, I find myself again in substantial disagreement with the majority. I first note the factual findings of both the state and federal trial courts.

The Oregon Supreme Court recited the findings of the state trial court in the following manner:

"While the record in the trial court discloses that the petitioner was 'advised of his right' to counsel and he 'stated he did not desire counsel,' the trial court presumably, because the record did not state that petitioner was specifically advised that he was entitled to court appointed counsel, heard evidence upon the issue of waiver. The trial court then made the following material findings:

"'He was advised of his right to counsel, but he was not specifically advised that he could have counsel at public expense.'

"'However, at that time, *the petitioner was aware of his right to court appointed counsel.* He had had such counsel in Multnomah County in 1948. The petitioner voluntarily, understandingly and freely, without any

1. At the outset, I think it important to clarify the issue that is before this court. The majority's statement of the factual background of the case indicates that we have before us an attack on the validity of appellant's 1946 and 1952 convictions. I do not so read the record. Neither the Oregon courts nor the federal trial court made any determination as to the validity of the 1946 proceeding. In the words of the Oregon Supreme Court:

"In the recidivist trial, the state relied upon *four* prior felony convictions, although *any three* prior felony convictions were sufficient to prove the petitioner's status and justify the sentence imposed.

\* \* \* \* \*

"The trial court did not pass upon the validity of the first conviction in Klamath County in *1946, and neither do we.*"

[Emphasis added.] Schram v. Gladden, 250 Or. 603, 444 P.2d 6, 7 (en banc 1968).

Similarly, the federal trial court did not find it necessary to decide the validity of the 1946 proceeding. Thus, I find the frequent references to the 1946 convictions to be superfluous, if not misleading.

The suggestion of the majority at page 2 that the recidivist proceeding rested upon *three* previous convictions (1946, 1948, and 1952), is incorrect. Under Oregon law (Ore.Rev.Stat. §§ 168.015 et seq.), convictions on multiple felony counts may be considered separately in subsequent recidivist proceedings. Thus appellant's conviction on one felony count in 1946; two felony counts in 1948; and one in 1952 resulted in a total of *four* felony convictions charged against him, not including the 1964 conviction that gave rise to the recidivist proceeding.

coercion or threats, waived his right to counsel and his right to Grand Jury investigation.'"

Schram v. Gladden, 444 P.2d at 8. [Emphasis added] [The opinion continues with a detailed recital of the 1948 proceeding in which appellant was *advised and furnished* with counsel *at public expense.* It explains the facts surrounding his dismissal of court appointed counsel over a month later and his retention at his expense of a different lawyer.]

The federal habeas judge found, on the basis of the state record in both the original and postconviction proceedings:

"The Oregon Supreme Court relied on circumstances surrounding a 1948 prosecution for the same offense to prove that at the time of the 1952 prosecution Petitioner knew that he was entitled to a court-appointed attorney. [250] Or. [603], 444 P.2d 6 (1968). The order in the 1948 proceeding states that Petitioner represented himself to be without funds, and that he requested a court-appointed attorney. The Court appointed an attorney, but shortly thereafter he asked to be relieved because Petitioner decided to hire his own attorney. I agree with the Oregon Supreme Court's finding that when arraigned in 1952 Petitioner knew that he had a right to a court-appointed attorney." [C.T. 22]

In spite of the foregoing findings of fact, the majority holds that Schram *"prima facie* sustained" his burden of proving nonintelligent waiver simply by introducing the record of the Oregon postconviction evidentiary hearing in which the court found that he had not been told specifically that an appointed attorney would be compensated by the state. (See quotation from opinion *supra.*) I am convinced, as were both the state and federal courts that reviewed the case, that appointment of counsel for the appellant to defend *exactly the same charge* four years earlier was evidence upon which a trial judge could conclude

that this appellant knew of and waived his right to court-appointed counsel. (Opinion of Ore.Sup.Ct. *supra.*) Indeed, as I discuss in greater detail, *infra,* reversal and entry of judgment for the *appellant as a matter of law* seems to contravene established law governing burden of proof and judicial fact finding power in federal *habeas* proceedings. I reach this conclusion for the following reasons:

*First,* although I recognize that we deal with a mixed question of fact and law, I am convinced that the standard of *habeas* review enunciated in Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) accords wide discretion to the *habeas* trier of fact to determine intelligent waiver *vel non* " \* \* \* in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." (304 U.S. at 464, 58 S.Ct. at 1023), while applying the heavy presumption against nonwaiver of important constitutional rights. Observance of this totality of circumstances requirement seems particularly important in the context of a case in which *both* a state and federal trial judge have found facts, which are not in dispute, and have determined that this petitioner knew of and waived his right to publicly compensated counsel.

In short, the central determination which governs the legal conclusions is the quantum of knowledge in this appellant's mind concerning his rights. I doubt that an appellate court is in a better position than a trial court to make this factual determination or to reject it once it is made on the basis of credible evidence. The majority opinion does this when it finds as a matter of law that appellant has "prima facie sustained" his burden of proof of nonwaiver simply by introducing into evidence a state court finding that indicates the state trial judge omitted mention of public compensation for appointed counsel. This is a narrow and inaccurate characterization of the state court findings which also included a detailed review of

appellant's previous publicly financed representation by counsel and his dismissal of such counsel in earlier proceedings for the same charge. (See 444 P.2d at 8)

*Second,* I think that the holding of the majority opinion, although not couched specifically in terms of burden of proof, implicitly dilutes the burden of proof requirement of Johnson v. Zerbst, *supra,* which was on the appellant, to overturn the presumption of regularity of the original proceedings.[2] It can be no answer that the case before us falls within the reasoning of Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962) where a criminal defendant's waiver of counsel was not shown in the record. The Supreme Court in *Carnley* (at 516, 82 S.Ct. at 890) stated that the *Johnson* burden of proof rule did not apply, but specifically approved the case of Moore v. Michigan, 355 U.S. 155, 78 S.Ct. 191, 2 L.Ed.2d 167 (1957). In *Moore,* the appellant was advised of his right to counsel *but no mention appears in the quoted record* (Id. at 157–158, 78 S.Ct. at 192–193) *of public compensation.* The burden was held to *remain on Moore* to establish nonintelligent waiver.

*Third,* the majority holding increases the difficulty of the federal habeas judge in deciding cases such as this involving proceedings of another era that took place before the extension of the various Bill or Rights guarantees to the states. As I have long maintained, I think it particularly important in these cases to accord flexibility to trial judges *to determine from all the facts* whether substantive constitutional rights have been denied.

Why should a *rule of law* be established that if a defendant was not *contemporaneously* advised that he had a right to free counsel, that his conviction

must be reversed, and that he should go free? What are the boundaries of "contemporaneous advice?" Is even that not a factual question, rather than one of law? Should the fact that no "contemporaneous" advice was given prevent, as a matter of law, an inquiry as to defendant's actual existing knowledge of his right to a lawyer at public expense?

The Supreme Court has recognized this trial judge's "difficulty," and has approved such a flexible approach in denying retroactivity to the recently tightened Rule 11 requirements in Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969), even in the face of its language in McCarthy v. United States, 394 U.S. 459, 466, 89 S. Ct. 1166, 1171, 22 L.Ed.2d 418 (1969), referring to the core of important constitutional rights waived when a guilty plea is entered. For example, in requiring strict observance of the requirements of Rule 11, it was said in *McCarthy*:

"A defendant who enters such a plea simultaneously waives several constitutional rights, including his privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers."[3] [Footnote omitted]

The denial of retroactive application to McCarthy is evidence of a recognition on the part of the Supreme Court of the very practical and common sense difficulties inherent in fastening recently recognized formal requirements on proceedings of an earlier era.[4] The majority opinion in this case ignores the underlying policy that motivated the *Halliday (supra)* and similar holdings when it decides this case on the absence of a formal colloquy containing the words "free", or "at no expense" or "publicly compensated". I repeat that I cannot

---

2. It also fails to honor, or even consider, the "presumption of correctness" contained in 28 U.S.C. § 2254(d), as established by Congress in 1966.

3. As to value of other court's findings on factual issues, see Brady v. United States, 397 U.S. 742 at 749, 90 S.Ct. 1463, 25 L.Ed.2d 747.

4. See generally the discussion in Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969).

believe that the mere lack of such a recitation should command reversal, and entry of judgment in favor of this appellant, in light of the evidence supporting the three previous state and federal decisions to the contrary. We should not be concerned with whether *we* would have reached exactly the same result as the trial judge, but whether there was sufficient factual evidence to support the legal conclusion he reached.

*Fourth*, in view of the foregoing, and the additional fact that no formal federal evidentiary hearing was held, I think that at the very least an appropriate disposition would be to allow the federal habeas judge the opportunity to assess first hand the credibility of the petitioner's assertion that he did not knowingly waive court-appointed counsel. This approach was taken by the Third Circuit in United States ex rel. Ackerman v. Russell, 388 F.2d 21, 24 (3rd Cir. 1968) —a case that I find indistinguishable from the one before use. There it was said:

> "It is unnecessary for this court to decide which of the two rules governing the burden of proof is applicable in this case because regardless of on whom the burden [of proof] rests the determination of the validity of appellant's waiver of counsel depends largely on what was said to him by [now deceased trial judge] Judge Mook and what he understood the advice to mean. *In determining the credibility of appellant's contention that he understood that he would have to pay for counsel even though court appointed, it was essential that he be given a hearing to enable him to demonstrate the truthfulness of his assertion.* The court before whom appellant could testify would have the opportunity to evaluate his demeanor and fully explore the merit of his contention."
> [Emphasis added]

After a remand for an evidentiary hearing, this may come before us again for a determination of whether the trial judge was clearly erroneous under Fed. R.Civ.Proc. 52(a). We would be in a much better posture on which to decide the case on factual grounds, although I recognize that a determination adverse to the appellant based upon his own testimony would be correspondingly more difficult—and rightly so—to overturn.

For the foregoing reasons, I dissent from the majority opinion, I would find the district court in error only because it did not grant a hearing and would remand with directions that such a hearing be had.