Alton Leroy PENN, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 24997.

United States Court of Appeals
Fifth Circuit.

Aug. 29, 1968.

See also, D.C., 267 F.Supp. 912.

James F. Mulla, Jr., New Orleans,
La., for appellant.

Richard M. Olsen, Asst. U. S. Atty.,
New Orleans, La., for appellee.

Before COLEMAN and CLAYTON *,
Circuit Judges, and JOHNSON, District
Judge.

JOHNSON, District Judge:

Alton Leroy Penn appeals a judgment
entered on a jury verdict of guilty to
three counts of an indictment wherein he
was charged with violating the Universal
Military Training and Service Act, Title
50 App. U.S.C. § 462, 62 Stat. 622. This
statute in pertinent part provides that:

"Any * * * person charged as
herein provided with the duty of carry-
ing out any of the provisions of this
title * * * or the rules or regula-
tions made or directions given there-
under, who shall knowingly fail or
neglect to perform such duty, * * *

* The Honorable Claude F. Clayton was a
member of the panel to which this case
was submitted. However, Judge Clayton
was of the opinion that the judgment
of the district court should be affirmed,

but due to illness he had no opportunity
to prepare a formal dissent. Judge Clay-
ton's right to file a dissenting opinion
at a later date is expressly reserved.

or who otherwise evades or refuses registration or service in the armed forces or any of the requirements of this title, * * * shall, upon conviction in any district court of the United States of competent jurisdiction, be punished * * *" by imprisonment up to five years, a $10,000 fine, or both.

The first count of the indictment charged Penn with failure to report for a physical examination on June 21, 1965; the second count charged him with failure to report for and submit to induction on March 15, 1966, and the third count charged him with failure to keep his local board advised of his mailing address between January 1, 1966, and March 15, 1966.

## I.

Penn argues that the district court committed error in failing to dismiss Count II of the indictment because it violated his right to a speedy trial and therefore due process. Penn was originally indicted in July, 1966, under a one-count indictment, which was identical to Count II of the indictment upon which he was convicted. Various proceedings were had in the district court during the summer of 1966, during which period Penn was represented by court-appointed counsel. On August 17, 1966, the Court on its own motion ordered Penn to submit to a psychiatric examination. After the examination, a mental competency hearing was held, as required by 18 U.S.C. § 4244, in November, 1966, at which time Penn was found to be mentally competent to stand trial. Two days before the trial was scheduled to commence on December 22, 1966, the United States Attorney moved for a continuance due to the illness of a witness and the absence of another witness from the State. The defendant did not object to or oppose the motion for a continuance and the motion was granted. In January, 1967, another grand jury returned the three-count indictment upon which Penn was tried and convicted. Subsequent to the return of that indictment, the United States Attorney moved

for and secured the dismissal of the July, 1966, indictment. Penn was arraigned on the three-count indictment in March, 1967, and entered a plea of not guilty to each count thereof.

Penn moved to dismiss Count II of the indictment upon which he was convicted because he alleged that it violated his right to a speedy trial and was merely an attempt to wear him down and coerce him into pleading guilty in violation of due process and, further, that the filing of the superseding indictment constituted double jeopardy. Neither of these grounds has merit.

With regard to jeopardy, the earliest time that jeopardy may attach following a plea of not guilty is at the swearing-in of the jury. Sanford v. Robbins, 115 F.2d 435 (5th Cir. 1940), cert. denied 312 U.S. 697, 61 S.Ct. 737, 85 L.Ed. 1132. Jeopardy has not attached in this case.

The elapsed time between Penn's original indictment and trial in this case was less than one year. The principal reasons for the delay were the mental examination of Penn and a continuance granted upon the motion of the Government, and unopposed by Penn, due to the sickness or absence of certain material witnesses. Under such circumstances, Penn clearly was not denied his right to a speedy trial. Mackey v. United States, 122 U.S.App.D.C. 97, 351 F.2d 794 (1965).

## II.

At the conclusion of the Government's case and again at the conclusion of his own case, Penn made motions for a judgment of acquittal. The case was allowed to go to the jury, however, on all three counts. The testimony as set out in the record reflects that the trial judge was correct in submitting the case to the jury. As a matter of fact, the only real question involved in the case was the question of Penn's knowing and intentional failure to perform as required by the Act. Each of the three counts in the indictment charged willful and knowing failure to perform. This, as to

each count, requires proof of a specific intent and this was undoubtably a jury question. Moorman v. United States, 389 F.2d 27 (5th Cir. January 24, 1968).

### III.

Penn next contends that the district court committed substantial error in permitting the witness Jensen to testify contrary to and different from the response of the Government to Penn's motion for a bill of particulars. In this connection, prior to the trial Penn served a motion for a bill of particulars on the Government which included the following questions:

"4. Were any oral, written, or taped or otherwise statements, admissions or confessions taken from Alton Leroy Penn?

"(a) If so, when, by whom and to whom?

"5. Where and when have agents of the United States interviewed or sought to interview the defendant?"

To these interrogatories the Government answered:

"In answer to Paragraph 4 of the defendant's motion, oral admissions were made to Charles Kelly, Special Agent of the Federal Bureau of Investigation, on May 23, 1966, at Miami, Florida."

F.B.I. Special Agent Kelly was not produced at the trial because of a sudden illness. Instead the Government called F.B.I. Special Agent Jensen, who was also present at the interview conducted by Agent Kelly but who did not actively participate in the interview. Penn contends that allowing Agent Jensen to testify to the substance of the interview conducted by Agent Kelly was erroneous as constituting a variance from the Government's answers to the bill of particulars. In allowing Agent Jensen to testify, the Court ruled that "if the witness is merely testifying as a witness to an oral admission made to Agent Kelly, then there has been, in fact, no misstatement, because the request for a Bill of Particulars does not ask the name of all witnesses. It merely asks to whom the admission was made; * * *" It is Penn's contention that Agent Jensen as well as Agent Kelly was an interviewing agent within the intent of the bill of particulars. Jensen testified, however, that he asked Penn no questions and that he made no notes at the interview, even though all three of them were in the same room at the time of the interview. Based on this testimony, it appears that Jensen was, as the trial court observed, merely a witness to admissions made by Penn to Agent Kelly. Assuming, however, that it be determined that the receipt of Jensen's testimony constituted a variance from the Government's bill of particulars in that Jensen was also an "interviewing agent," it is difficult to see how Penn could have been prejudiced thereby. The trial court at the time of the objection to the receipt of Jensen's testimony observed— and we agree—that no prejudice would result therefrom. It should, however, be noted that Penn does not at this time claim any surprise in the receipt of Jensen's testimony. Under such circumstances it does not appear that Penn sustained any prejudice by the trial court's allowing Jensen to testify. Rose v. United States, 128 F.2d 622 (10th Cir. 1942).

### IV.

Penn's last contention is that the trial court committed substantial error in allowing F.B.I. Special Agent Harold K. Parson to testify to certain circumstances leading up to and surrounding Penn's arrest. This testimony was admitted over the objection of Penn's counsel. The evidence reflects that Penn was arrested in a "hammock" adjacent to a field where immediately prior to his arrest he had been picking tomatoes as a member of a labor crew. Agent Parson's testimony on the direct examination was as follows:

"Q. Would you briefly describe your meeting with him?

"A. Yes, sir. Our office had received a communication from the New Orleans Office of the Fed-

eral Bureau of Investigation, indicating that a federal warrant was outstanding for a Mr. Penn, and that we are to apprehend him. Our investigation reflected that he had been working with a labor contractor in the Okeechobee, Florida area and further investigation indicated that this labor crew was in a tomato field in the British Indian reservation area west of Lake Okeechobee in the Everglades area of Florida.

We proceeded to this area; that is, Agent Kenneth Lang, and myself in an FBI car, and we drove into the field area where they were picking tomatoes there. *Our investigation reflected that upon our arrival there, Mr. Penn had fled to an adjoining Hammock area, which is a jungle type area adjoining the tomato field.* Surrounding this Hammock area is a high Savannah grass area. Our search throughout this area and in the grass and in the Hammock Jungle was over a period of two or three hours, in which we also used the assistance of a crop dusting airplane. Finally, in looking through the jungle, I came across Mr. Penn, and there I asked him if his name was Penn. He said that it was." (Emphasis supplied).

Cross examination of this F.B.I. agent reflects that neither of the F.B.I. agents saw Penn leave the tomato field; that when they arrived on the tomato field scene, they made inquiry concerning Penn, and the other farm workers advised them that Penn "went" into the hammock. The record is not clear as to how long Penn had been gone before the arrival of the F.B.I. agents. That portion of the agent's testimony to the effect that "Our investigation reflected * * * [that] Penn had fled * * *" was simply nothing more than the agent's translation that the other workers told him Penn had gone into the

hammock. All the testimony, therefore, relative to Penn's alleged flight was rank hearsay. The authorities are clear that the admission of such testimony if of a substantial nature or otherwise prejudicial is error:

"[W]e think it clear beyond question that the admission of the hearsay testimony fatally impregnated the case with prejudicial and reversible error." Panci v. United States, 256 F.2d 308, 311 (5th Cir. 1958). See also Harlow v. United States, 301 F.2d 361, 368–369 (5th Cir. 1962); Montford v. United States, 200 F.2d 759, 761 (5th Cir. 1952).

The test as to whether the admission of hearsay testimony constitutes reversible error is:

"In deciding whether or not this is such a substantial or prejudicial error as to warrant a reversal, we must determine what the error meant to the jury in relation to all else that happened. Ahlstedt v. United States of America, 5 Cir., 1963, 315 F.2d 62. As we said in that case, quoting from Kotteakos v. United States, 1946, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557:

" 'If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and judgment should stand, except perhaps where the departure is from a constitutional norm of (sic) a specific command of Congress. * * But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot

340

stand.'" Mole v. United States, 315 F.2d 156, 158 (5th Cir. 1963).

The law clearly recognizes that juries may consider flight and draw an inference of guilt therefrom. United States ex rel. Miller v. Pate, 342 F.2d 646 (7 Cir.); United States v. Accardi, 342 F.2d 697 (2 Cir.). Thus, a highly critical point on the question of intent was whether Penn fled or left the tomato field area immediately upon seeing the agents drive up. The agent's characterization of what the coworkers told him leaves the distinct inference that Penn was guilty of flight to avoid apprehension. Since intent is a critical point in each of the three counts in this indictment, this Court concludes that Penn was substantially prejudiced by the admission of this testimony. We consider that the prejudice was substantial to the point of necessitating a reversal of the conviction on each of the three counts. Accordingly, the judgment of conviction is reversed and the matter is remanded to the district court.

CLAYTON, Circuit Judge, dissents.