James Henry DAVIS, Petitioner-Appellee,

v.

S. Lamont SMITH, Warden, Georgia State Prison, Respondent-Appellant.

No. 28500.

United States Court of Appeals, Fifth Circuit.

Aug. 5, 1970.

Arthur K. Bolton, Atty. Gen. of Georgia, Mathew Robins, Asst. Atty. Gen., Dorothy Beasley, Deputy Asst. Atty. Gen., Atlanta, Ga., Harold N. Hill, Jr., Executive Asst. Atty. Gen., Marion O. Gordon, Asst. Atty. Gen., for respondent-appellant.

Hugh M. Dorsey, Jr., Atlanta, Ga., for petitioner-appellee.

Before JOHN R. BROWN, Chief Judge, and BELL and INGRAHAM, Circuit Judges.

JOHN R. BROWN, Chief Judge:

This appeal presents the statistically rare case of a writ of habeas corpus that was granted by the Federal District Court.[1] Davis, a Negro, was convicted of burglary in the Superior Court of Fulton County in September 1966. After petition for writ of habeas corpus in the Superior Court of the County of Tattnall, (place of confinement) was denied, he took no further action in State Court but filed a petition for habeas corpus in Federal District Court. Following an evidentiary hearing, the Court below concluded that (i) the grand jury that had indicted him and the petit juror that had convicted him were ones in which the State had systematically excluded Negroes and (ii) the evidence of the fruits of the crime had been obtained in a search without probable cause. Agreeing that the jury indeed was impermissibly selected, we affirm the grant of the writ, but reverse as to issue (ii).

## I. Exhaustion of State Remedies

The initial inquiry must deal with the contention that Davis has not exhausted his state remedies on the jury discrimination issue. The starting point is the fairly recent Georgia Habeas Corpus Act of 1967,[2] which greatly expanded the Georgia scope of post conviction relief.

In Peters v. Rutledge, 5 Cir., 1968, 397 F.2d 731, we emphasized that in the

---

1. "Though there are a great many applications for habeas corpus, it is rare indeed to have the single Federal Judge set free the prisoner the state has convicted." C. Wright, Federal Courts § 53, at 217 (2d ed. 1970).

2. For the full text of the Act's key provisions, see Appendix of McGarrah v. Dutton, 5 Cir., 1967, 381 F.2d 161, 166–168.

interests of comity and judicial administration, the Federal Courts should leave to the state the primary burden for post conviction relief.[3] "This places responsibility where it squarely belongs and where Georgia wants it." *Peters*, at 736. And the new Georgia Act with its new procedures for relief would seem to make the Federal Court back even further away from intervention until Davis has appealed the state habeas ruling to the Georgia Supreme Court. *Peters*, at 735.

But what seems to be is not what is. Here we have a conviction following a trial occurring before the famous 1967 decision in Whitus v. Georgia, 1967, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 and a trial in which no objection was offered to the composition of the venire during the trial. We have, of course, held that failure to object at trial to discriminatory exclusion of members of the defendant's race does not necessarily constitute a waiver of a right to a jury which is a fair cross section of the community. Whitus v. Balcom, 5 Cir., 1964, 333 F.2d 496, cert. denied, 379 U. S. 931, 85 S.Ct. 329, 13 L.Ed.2d 343.

See also United States ex rel. Goldsby v. Harpole, 5 Cir., 1959, 263 F.2d 71, cert. denied, 1959, 361 U.S. 838, 80 S.Ct. 58, 4 L.Ed.2d 78. On the other hand, the Georgia Supreme Court has made it quite explicit that a combination of these two factors forecloses the possibility of judicial review of jury discrimination in the State Courts. Despite the broad authority under the 1967 Act (see note 2, *supra*) the Supreme Court in Strauss v. Grimes, 1969, 223 Ga. 834, 158 S.E.2d 404, cert. denied, 391 U.S. 903, 88 S.Ct. 1651, 20 L.Ed.2d 417, held that in a pre-*Whitus* conviction[4] in which no objection had been made at trial, the Georgia Courts can afford no habeas corpus relief. Therefore, Davis should not be required to undergo the fruitless pursuit of appeal to the Georgia Supreme Court. The door to the Federal Court is therefore open and its constitutional duty clear, but in no sense can this unwillingness of Georgia Courts to afford the full post conviction review envisaged by the plain terms of the 1967 Act[5] be characterized as an interference by Federal Courts in the Georgia process of criminal law.

---

3. This Court has consistently magnified the immediate, direct responsibility of the states in post conviction cases and the fullest exploitation of the many new procedures.

   In Florida see Boyer v. City of Orlando, 5 Cir., 1968, 402 F.2d 966; Wainwright v. Simpson, 5 Cir., 1966, 360 F.2d 307; Milton v. Wainwright, 5 Cir., 1968, 396 F.2d 214; Spencer v. Wainwright, 5 Cir., 1968, 403 F.2d 778.

   In Georgia see Williams v. Dutton, 5 Cir. 1968, 400 F.2d 797; McGarrah v. Dutton, 5 Cir., 1967, 381 F.2d 161.

   In Mississippi see Irving v. Breazeale, 5 Cir., 1968, 400 F.2d 231.

   In Texas see Texas v. Payton, 5 Cir., 1968, 390 F.2d 261; Stepp v. Beto, 5 Cir., 1968, 398 F.2d 814; Welch v. Beto, 5 Cir., 1968, 400 F.2d 582; Phelper v. Decker, 5 Cir., 1968, 401 F.2d 232; Berry v. Beto, 5 Cir., 1969, 410 F.2d 503.

   Only in rare instances do we bypass the state remedy where remand calls for further proceedings.

4. Although *Whitus* has not explicitly been made retroactive by the Supreme Court, in Jones v. Georgia, 1967, 389 U.S. 24, 88 S.Ct. 4, 19 L.Ed.2d 25, the Supreme Court applied *Whitus* to a conviction handed down before *Whitus.*

5. We recognized this possibility:
   "We are aware, of course, that Georgia has imposed rigid, sometimes technical restrictions on its former habeas corpus relief. See McGarrah v. Dutton, 5 Cir., 1967, 381 F.2d 161, 165; Mobley v. Dutton, *supra* [380 F.2d 14]; Whippler v. Balcom, 5 Cir., 1965, 342 F.2d 388; Smart v. Balcom, 5 Cir., 1965, 352 F.2d 502; Cobb v. Balcom, 5 Cir., 1964, 339 F.2d 95. And there may be some who apprehend that the Georgia courts will interpret or apply the new act with a like approach."
   *Peters, supra*, 397 F.2d at 737.
   We nonetheless persist in the course of putting the responsibility squarely on Georgia until, as *Strauss, supra*, the Court holds that habeas review is not available for the issue asserted.

## II.  Jury Racial Discrimination

■ On the merits the disparity [6] is so great that the state does not, and cannot, overcome the charge of racial exclusion based upon *Whitus, supra,* and a long line of our cases [7] culminating in Jones v. Smith, 5 Cir., 1969, 420 F.2d 774, which involved this very county.

Rare it is that two fact situations coincide as perfectly as do the one here and the one in Jones.[8] Thus we hold that the State has not met the burden of overcoming the showing of racial discrimination in the jury system.

Thus the conviction must be set aside with the state, of course, being afforded the right within a reasonable time to seek an indictment from a validly constituted grand jury and in such event to retry him before a validly constituted jury.

## III.  Search and Seizure

■■ In this situation we would not ordinarily pass upon points which might recur in the retrial. But since, if left standing, Georgia is faced with a deliberative holding that for constitutional reasons the search was invalid, this will markedly, if not decisively, affect the trial, we should in the interest of administration determine the issue *so far* as it is revealed by this record. In any retrial it is likely that the same or similar evidence will be introduced. Substantially the same Fourth Amendment problems will be present. We repeat the caveat, however, that our determination is on the present record. We do not assay possible factual variations or their legal significance. This is for the Georgia Courts initially.

Davis was convicted of burglarizing a warehouse and stealing seven televisions and two table lamps. The arresting officer was tipped off by an informer that the Defendant was planning to take "a bunch of televisions * * * to 188 Bailey Street, S.W., * * * supposed to have been taken in a burglary." The house was put under surveillance and Davis arrived shortly thereafter with three boxes on the back seat of his car. These apparently were manufacturer's cartons each containing a television. Soon afterward Davis was arrested.

On the probable cause issue the hearing centered around two factual determinations: Whether the boxes inside the car, which were visible from the outside, were marked so as to indicate that they contained television sets and the reliability of the informer who gave the information to the police.

The cases dealing with informers make it clear that there must be some evidence of reliability other than the conclusory statement of the police officer that the informer is reliable. In Aguilar v. Texas, 1964, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, the Supreme Court said that it was insufficient for a search warrant to be granted simply because an officer stated he had "received reliable information from a credible

---

6.  The District Court's findings are not challenged:
    "The statistics presented by defendant reveal that while approximately 32% of the over-21 population, and 15% of the taxpayers, were Negroes, fewer than 5% of those on the jury panels from which the grand and petit juries were drawn were Negroes. Fewer than 10% of the members of the grand jury which indicted petitioner, and none of the members of the petit jury which tried him, were Negroes."

7.  Most prominent are the en banc cases of 1966. Brooks v. Beto, 5 Cir., 1966, 366 F.2d 1, cert. denied, 386 U.S. 975, 87 S.Ct. 1169, 18 L.Ed.2d 135; Rabinowitz v. United States, 5 Cir., 1966, 366 F.2d 34; Scott v. Walker, 5 Cir., 1966, 358 F.2d 561; Davis v. Davis, 5 Cir., 1966, 361 F.2d 770; Labat v. Bennett, 5 Cir., 1966, 365 F.2d 698, cert. denied, 386 U.S. 991, 87 S.Ct. 1303, 18 L.Ed.2d 334; Billingsley v. Clayton, 5 Cir., 1966, 359 F.2d 13, cert. denied, 385 U.S. 841, 87 S.Ct. 92, 17 L.Ed.2d 74. See also our recent opinions in Preston v. Mandeville, 5 Cir., 1970, 428 F.2d 1392; Ford v. White, 5 Cir., 1970, 430 F.2d 951.

8.  In colloquy in the District Court all conceded that if *Jones*, then on appeal, were affirmed by us, the jury would be invalid.

person."[9] Thus, the leading case of McCray v. Illinois, 1967, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62, emphasizes that the officer had known the informant over two years, that the informant had given him information about narcotics twenty or twenty-five times and that the information had led to convictions. 386 U.S. 304, 87 S.Ct. 1056, 18 L.Ed.2d at 66.

Whatever apprehensions we might have, were the informer's tip standing alone, evaporate when we take into account, as we must, the observations of the officer himself, a factor not present in *Aguilar*. In *Spinelli*, note 9, *supra*, the Court delved into how insufficient information from an informer could be made sufficient with the addition of extra ingredients. Following *Spinelli*, we must ask, "Can it fairly be said that the tip, even when certain parts of it have been corroborated by independent sources, is as trustworthy as a tip which would pass Aguilar's tests without independent corroboration?" 393 U.S. at 415, 89 S.Ct. at 588, 21 L.Ed.2d at 643. In Gonzales v. Beto, 5 Cir., 1970, 425 F. 2d 963 at 969, we pointed out that the informer's tip may be buttressed by "either (1) independent observations by the affiant [to] corroborate sufficient details of the tip (whether suspicious or not) to negate the possibility that the informer 'fabricat[ed] his report out of the whole cloth' (the *Draper* situation), or (2) independent observations by the affiant [that] contribute[s] to a showing of probable cause by revealing not merely normal patterns of activity but activity that reasonably arouses suspicion (the *McCray* situation)."

That road, although no wide super highway, leads to probable cause. The officer testified that he could see that the boxes in the car were plainly marked "RCA Colored Television". Certainly the tip plus the observation that Davis was riding around with three identifiable television cartons in his back seat at 4:00 in the morning rises above the level of mere suspicion. But the evidence on this point runs both ways. The findings of the District Judge make no reference at all as to whether the boxes were so marked. Thus, one course open to us here would be a remand to the District Court for a finding on this point, for were the Judge to find that the boxes were marked, then he would be compelled to find that there was probable cause for the arrest and the search of the car incident to it.

But we need not take this step here. For during the state proceedings the record reveals uncontradicted evidence that the officer could and did see not only the car, but also the front porch of the house to which the televisions were to be delivered. On that porch were exposed four other portable TVs and two lamps. It would stretch credulity too far to say that a prudent officer would not have probable cause to believe a crime was being committed when, following the tip, he sees three large, even though unmarked, boxes being delivered to a porch of a house which was neither a TV sales or service concern.

■ There can be no question of our right to consider this evidence. The State Court proceedings are a vital part of the fact-finding and judgmental process. Townsend v. Sain, 1963, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770, tells us that "to be sure, the state-court record is competent evidence, [in a federal habeas corpus proceeding] and either par-

9. Of course *Aguilar* dealt with the probable cause issue in the context of the requirements for obtaining a search warrant. But in Spinelli v. United States, 1969, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637, the Supreme Court said that "while Draper [Draper v. United States, 1959, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327] involved the question whether the police had probable cause for an arrest without a warrant, the analysis required for an answer to this question is basically similar to that demanded of a magistrate when he considers whether a search warrant should issue." 393 U.S. at 417, 89 S.Ct. at 589, 21 L.Ed.2d at 644, n. 5. And see the very recent case of Chambers v. Maroney, 1970, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419.

ty may choose to rely solely upon the evidence contained in that record, * * *." 372 U.S. at 322, 83 S.Ct. at 761, 9 L.Ed.2d at 791. And, the Federal District Court may, and ordinarily should, compel production of the State Court record, 372 U.S. at 318–319, 83 S. Ct. at 745, 9 L.Ed.2d at 789. Both the District Court and this Court must consider such evidence along with other properly admitted evidence in determining the critical issues. To avoid a conflict between the Constitution and common sense, Mapp v. Ohio, 1961, 367 U.S. 643, 657, 81 S.Ct. 1684, 1693, 6 L.Ed.2d 1081, 1091, we must conclude that there was probable cause for the arrest.

Thus, on any retrial the Constitution does not on this record compel exclusion of the fruits of the search of the automobile.

Affirmed in part and reversed in part.