UNITED STATES of America,
Plaintiff-Appellee,

v.

Jesus Reyes MENDOZA et al.,
Defendants-Appellants.

No. 71–3146.

United States Court of Appeals,
Fifth Circuit.

Nov. 20, 1972.

Rehearing Denied Jan. 12, 1973.

Ruben R. Montemayor, San Antonio, Tex., Clyde W. Woody, Houston, Tex., for Oscar Reyes Mendoza.

Marian S. Rosen, Houston, Tex., for Manuel Mendoza and Ruben Mendoza.

Anthony J. P. Farris, U. S. Atty., James R. Gough, Mary L. Sinderson, Asst. U. S. Attys., Houston, Tex., for plaintiff-appellee.

Clyde W. Woody, Houston, Tex. (Court appointed), for Jesus Reyes Mendoza, Gregorio Reyes Mendoza, Jr., Arturo Reyes Mendoza and Blas Tamaz Martinez.

Before GEWIN, THORNBERRY and CLARK, Circuit Judges.

CLARK, Circuit Judge:

Jesus Reyes Mendoza, Gregorio Reyes Mendoza, Jr., Blas Tamaz Martinez, Arturo Reyes Mendoza, and Oscar Reyes Mendoza appeal from three convictions for violating 21 U.S.C. § 176a, which deals with the importation, receipt, concealment, and sale of marijuana and from one conviction for conspiring to violate the same statute. All appellants except Oscar Reyes Mendoza (Oscar) are proceeding in forma pauperis with court-appointed counsel. Retained counsel for Oscar has filed a separate brief and was permitted separate oral argument.

*Double Jeopardy*

Although separate counsel proceed on somewhat different theories, all appellants contend they were twice placed in jeopardy. The facts claimed to support this argument are as follows:

█ First, after the first four appellants were indicted on these charges, that indictment was dismissed and a new indictment was drawn naming three additional defendants (including Oscar). This new indictment was identical to the

first except that additional overt acts were alleged under the conspiracy count. This dismissal and reindictment does not constitute double jeopardy since at that time no jury had been sworn. Penn v. United States, 401 F.2d 336 (5th Cir. 1968).

Second, it is urged that the government at the time of the trial had elected to punish the defendants by forfeiting their automobiles. Arguably this forfeiture constituted a criminal punishment. If that were accepted, then it would follow that appellants were twice punished for their crime. The cases cited in support of this argument, however, including United States v. United States Coin and Currency, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971), are inapposite. They merely stand for the principle that the safeguards secured by the Constitution, such as protection against self-incrimination, are available to one whose property is forfeited. In no reasonable sense can it be said that these cases undertake to make forfeiture proceedings the equivalent of criminal prosecutions for double jeopardy purposes.

Third, Oscar alone contends that the defendants were twice placed in jeopardy because they were twice arraigned after the jury was sworn. The record shows that during the reading of the indictment the names of two of the seven defendants indicted, whose trials had been severed, were omitted. After objection was made, the indictment was read in its original tenor including the names of all seven originally indicted defendants. At most there was a momentary interruption of the trial due to this technical error. None of the appellants suffered any prejudice or delay as a result of its correction. See United States v. Bringhurst, 468 F.2d 604 (5th Cir. 1972). Indeed, Oscar concedes in his brief "that a trial judge could conceivably have the authority to stop a trial and permit the Government to amend an indictment and to rearraign a defendant; such termination of the trial, of course, would require the impaneling of a new jury, and if such new impanelment occurred then the exception would exist without dilutement of a defendant's rights under the Fifth Amendment." Oscar's contention is that the incorrect first reading of the indictment was such an event that the trial should have been terminated and the process begun *ab initio*. The Supreme Court in Lovato v. New Mexico, 242 U.S. 199, 202, 37 S.Ct. 107, 108, 61 L.Ed. 244 (1916), where almost precisely the opposite contention was raised, used the following language:

> [W]e think the contention that the accused was twice put in jeopardy is wholly without merit. Under the circumstances there was, in the best possible view for the accused, a mere irregularity of procedure which deprived him of no right. Indeed, when it is borne in mind that the situation upon which the court acted resulted from entertaining a demurrer to the indictment after a plea of not guilty had been entered and not withdrawn, it is apparent that the confusion was brought about by an overcautious purpose on the part of the court to protect the rights of the accused. Whether or not, under the circumstances, it was a necessary formality to dismiss the jury in order to enable the accused to be again arraigned and plead, the action taken was clearly within the bounds of sound judicial discretion.

Here, the mere omission of two names from the indictment would not justify the unnecessary formality which Oscar urges this court to require.

## The Indictment

We reject the contention that the reading of the indictment in its original and correct form, after the first improper reading, constituted an amendment to the indictment as returned by the grand jury. Nor is there any merit in the argument that the first count of the indictment was invalid since it

didn't allege the infractions of the law were committed "with intent to defraud." It is well established that it is not necessary in a conspiracy count that the object of the conspiracy be described in the detail required in an indictment for the substantive offense itself. *See, e. g.,* United States v. Bullock, 451 F.2d 884, 888 (5th Cir. 1971) ; United States v. Fischetti, 450 F.2d 34, 40 (5th Cir. 1971), cert. denied, 405 U.S. 1016, 92 S. Ct. 1290, 31 L.Ed.2d 478 (1972) ; Walker v. United States, 342 F.2d 22, 27 (5th Cir.), cert. denied, 382 U.S. 859, 86 S.Ct. 117, 15 L.Ed.2d 97 (1965). We think that the indictment charging that the defendants "did unlawfully, willfully, and knowingly conspire with each other . . ." to commit certain violations of Section 176a is a sufficient allegation of intent and served as fair notice to the defendants.

### Jury Instructions

■ Appellants assert error in that the trial court refused to instruct the jury that the acts and statement of the conspirators must have been in furtherance of the conspiracy to be admissible against all co-conspirators. Counsel, however, have not been able to point out in their briefs or in response to questioning on oral argument any acts or statements admitted into evidence which were not in furtherance of the conspiracy. Thus, even if there were any error in the trial court's instruction, it was harmless to the defendants in this case. Nor is there any error in the court's refusal to exclude from the jury's consideration as to the substantive counts the evidence admitted under the co-conspirator exception to the hearsay rule. This exception is generally applicable to criminal prosecutions and not limited to prosecutions for conspiracy. United States v. Johnson, 466 F.2d 508 (5th Cir. 1972) ; United States v. Cox, 449 F.2d 679 (10th Cir. 1971), cert. denied, 406 U.S. 934, 92 S.Ct. 1783, 32 L.Ed.2d 136 (1972) ; United States v. Jones, 438 F.2d 461 (7th Cir. 1971) ; United States v. Williams, 435 F.2d 642 (9th Cir.

1970), cert. denied, 401 U.S. 995, 91 S. Ct. 1241, 28 L.Ed.2d 533 (1971) ; McGregor v. United States, 422 F.2d 925 (5th Cir. 1970) ; see United States v. Fischetti, *supra,* 450 F.2d 34, at 40–41.

### Searches

■ The appellants other than Oscar also complain of the warrantless search of an automobile belonging to Oscar which was delivered to one Koons, a government informer, for the purpose of building a secret compartment in the trunk. These appellants have no standing to complain of the search of Oscar's car since they had no property interest in the car and were not in possession at the time of the search. *See* Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969) ; Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960) ; United States v. Banks, 465 F.2d 1235 (5th Cir. 1972).

■ Although Oscar did not specifically raise the question of the legality of this same search in this appeal, we deem the ends of justice as well as sound judicial administration require that we determine whether he may be entitled to relief on this issue which is now before the court. The record in this case shows that Koons was given possession for more than a mere custodial purpose; he was believed to be a member of the conspiracy and was given possession for the purpose of constructing a secret compartment in the trunk to further the object of the conspiracy—the smuggling of a contraband drug. While the members of the conspiracy no doubt misplaced their confidence when they entrusted their secrets to Koons, the risk of being betrayed by an informer is one of those risks that conspirators necessarily assume. United States v. White, 401 U.S. 745, 748–758, 91 S.Ct. 1122, 1124–1127, 28 L.Ed.2d 453 (1971) ; Alderman v. United States, *supra,* 394 U.S. 165, at 179 n. 11, 89 S.Ct. 961, at 970 n. 11; Hoffa v. United States, 385 U.S. 293, 302–303, 87 S.Ct. 408, 413–414, 17 L.Ed.2d 374 (1966). No meaningful

distinction can be drawn between betrayal by relating the substance of a conversation and betrayal by consent to a search of an automobile; and as a matter of fact, on any scale of expectation of privacy, we find it likely that most people would place a greater premium on the sanctity of their conversations with their supposed friends. Koons' breach of his trust is no violation of any right protected by the Fourth Amendment. The facts of this case convincingly demonstrate that Koons was given such complete and unrestricted freedom over the property that Oscar abandoned any expectation of privacy as to any action Koons might take. *See* Lewis v. United States, 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966); Brown v. Brierley, 438 F.2d 954 (3rd Cir.), cert. denied, 402 U.S. 997, 91 S.Ct. 2182, 29 L.Ed.2d 163 (1971); United States v. Haden, 397 F.2d 460 (7th Cir. 1968), cert. denied, 396 U.S. 1027, 90 S. Ct. 574, 24 L.Ed.2d 523 (1970).

█ Appellants also complain of another search, alleging that the affidavit supporting the warrant, which we include in the margin,[1] did not comport with the requirements of United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed. 723 (1971); Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.

Ed.2d 637 (1969); and Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed. 2d 723 (1964). It is urged that the affidavit is not sufficient to allow a magistrate to make an independent finding as to the credibility of Koons, since there is merely a statement that he is "known to be reliable." The affidavit itself shows, however, that Koons' information concerning the proposed journey to and from Mexico was confirmed by constant surveillance by the U. S. Customs Service. This independent confirmation of Koons' information provided a sufficient factual basis for the magistrate's decision as to the reliability and veracity of Koons. Davis v. Smith, 430 F.2d 1256 (5th Cir. 1970); Gonzales v. Beto, 425 F.2d 963 (5th Cir. 1970), cert. denied, 400 U.S. 1001, 91 S.Ct. 476, 27 L.Ed.2d 452 (1971).

█ We also reject the contention that the description of either the objects of the search or of the place to be searched was impermissibly broad. Though in executing the warrant the officers may have seized items which were not within the scope of the warrant, that does not affect the legal seizure of the items which were within the scope of the warrant. Brooks v. United States, 416 F.2d 1044 (5th Cir. 1969), cert. denied, 400 U.S. 840, 91 S.Ct. 81,

---

1. Affiant, Earl W. Simmons, Senior Resident Agent, U. S. Customs Service, Department of the Treasury, Corpus Christi, Texas was informed by Glenn H. Koons, a person known to him to be reliable, on November 14, 1970 that on November 15, 1970, he (Koons) and one Blas Martinez would proceed to Mexico in a 1965 Pontiac, grey, bearing 1970 Texas license JCN 363, and acquire and purchase a quantity of marijuana, which would subsequently be smuggled into the United States at a port of entry between Brownsville, Texas and Laredo, Texas, to be brought to 1822 Yale Street, Corpus Christi, Texas. Further, that on November 17, 1970, the above-described Pontiac vehicle was observed by special agents, U. S. Customs Service, entering the United States from Mexico at Hidalgo, Texas. Further, that agents of the U. S. Customs Service maintained constant sur-

veillance of the above-described Pontiac vehicle from the time of its entry into the United States at Hidalgo, Texas to its arrival at the premises at 1822 Yale Street, Corpus Christi, Texas. Further, that at approximately 7:15 P.M. on November 17, 1970 said Koons informed said Simmons that the previously described Pontiac vehicle contained approximately 80 bricks of marijuana which was loaded in said vehicle in Mexico, and which marijuana was in the previously described Pontiac vehicle at the time it entered at Hidalgo, Texas and at the time it arrived at 1822 Yale Street, Corpus Christi, Texas. And further that your affiant Simmons was informed by said Koons that he (Koons) traveled in said Pontiac vehicle from Mexico, into the United States at Hidalgo, Texas and then to 1822 Yale Street, Corpus Christi, Texas, described hereinabove.

27 L.Ed.2d 75 (1970). With the sole exception of a firearm found in plain view on a bench at the searched premises, appellants have failed to suggest that the government introduced into evidence any of the seized articles which were not within the scope of the warrant; thus, the seizure of those articles, even if invalid, provides no ground for complaint in this proceeding. While the record is not such as would enable us to determine whether the gun was properly seized, either as contraband, as evidence having a nexus with the crime under investigation,[2] as evidence revealed by a proper search incident to an arrest, or under some other theory, its introduction into evidence in this case with other evidence seized during the search was so perfunctory and low key that no possible prejudice to the appellants could have resulted. If error it was, it was harmless beyond a reasonable doubt. *See* Schneble v. Florida, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

### Other Asserted Errors

We reject as without merit Oscar's claim that there was insufficient evidence to support a verdict against him. The record reveals more than ample evidence to support the verdict.

Nor is there any merit in the claim that the government failed to properly establish a chain of custody for some of the evidence admitted. The objection merely goes to the weight to be given the evidence by the jury, and not to its admissibility. United States v. Wilson, 451 F.2d 209, 213 (5th Cir. 1971).

The convictions of all appellants are in all respects

Affirmed.

2. *See* United States v. Kane, 450 F.2d 77, 85 (5th Cir. 1971), cert. denied, 405

**ON PETITION FOR REHEARING**

Before GEWIN, THORNBERRY and CLARK, Circuit Judges.

PER CURIAM:

On petition for rehearing it is contended that the recent decision of the Supreme Court in One Lot Emerald Cut Stones v. United States, 409 U.S. 232, 93 S.Ct. 489, 34 L.Ed. 438 (1972) provides support for the position that the automobile forfeiture action placed the appellants in jeopardy of criminal punishment and thus, this criminal proceeding was barred by the double jeopardy provision of the fifth amendment. We find no support in *Emerald Stones* for that contention; rather, the case is strong authority that such a forfeiture constitutes a civil remedy rather than a criminal penalty. We adhere to our original opinion.

The petition for rehearing is denied.